IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 22-cv-01916-RM-KAS

JORDAN CHRISTENSEN,

    Plaintiff,

v.

DENVER HEALTH AND HOSPITAL AUTHORITY d/b/a Denver Health Paramedic Division,

    Defendant.

---

# ORDER

---

    This employment discrimination case is before the Court on Defendant's Motion for Summary Judgment (ECF No. 90), which has been fully briefed (ECF Nos. 108, 109). The Motion is granted for the reasons below.

**I.    BACKGROUND**

    Plaintiff worked for Defendant as a paramedic from 2012 until 2021, when he was fired. According to the termination notice, Plaintiff "exhibited poor judgement" during a patient call on December 8, 2020, when he "administered a medication [epinephrine] that was not appropriate for the situation or the symptoms presented in the patient." (ECF No. 89-5 at 2.) The notice further states that "[i]n two separate meetings where leadership attempted to discuss the incident and provide coaching on your inappropriate use of the medication, you deflected blame, refused to acknowledge that the decision was inappropriate, and failed to take responsibility for the danger of your actions." (*Id.*) During the meeting at which Plaintiff was terminated, Defendant

reiterated to Plaintiff that he had stopped listening to those who were trying to correct or steer his practice of medicine.  (ECF No. 110, ¶¶ 15.)

Plaintiff, who is gay, contends that Defendant discriminated and retaliated against him based on his sexual orientation and because he complained about being treated unfairly and experiencing harassment on the job.  He asserts four claims for discrimination and retaliation under Title VII of the Civil Rights Act and under the Colorado Anti-Discrimination Act ("CADA").

## II.     LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).  Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in his favor.  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).  However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the

matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

Where the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment bears the initial burden of showing an absence of any issues of material fact. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019). If the moving party demonstrates that the nonmoving party's evidence is insufficient to establish an essential element of his claim, the burden shifts to him to set forth specific facts showing that there is a genuine issue for trial. *See id.* If he fails to make a showing sufficient to establish the existence of an element, summary judgment must be entered in favor of the moving party. *See id.*

### III. DISCUSSION

The analysis for CADA discrimination and retaliation claims is identical to that under Title VII; therefore, the Court analyzes both sets of claims together. *See Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1107 n.2 (D. Colo. 2021).

#### A. Discrimination Claims

Title VII prohibits an employer from discriminating against someone because of his sexual orientation. *See* 42 U.S.C. § 2000e-2(a)(1); *Bostock v. Clayton Cnty.*, 590 U.S. 644, 683 (2020). A plaintiff may prove discrimination with either direct or circumstantial evidence. *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Where, as here, a plaintiff relies on circumstantial evidence, courts use the three-step framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), to determine whether the evidence raises an inference of invidious discriminatory intent sufficient to survive

summary judgment. *See Adamson*, 514 F.3d at 1145. First, the plaintiff must establish a prima face case of discrimination. *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011). Second, the burden shifts to the employer to articulate legitimate, nondiscriminatory reasons for its action. *Id.* Third, if the defendant proffers such reasons, the burden shifts back to the plaintiff to show they are pretextual. *Id.* The Court finds Plaintiff cannot establish a prima facie case or show that Defendant's stated reasons for firing him are pretextual.

### 1.  Prima Facie Case

To establish a prima face case of discrimination, a plaintiff must show that he belongs to a protected class, he suffered an adverse employment action, and the circumstances give rise to an inference of discrimination. *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021). Defendant does not dispute the first two elements, so the Court addresses the third.

To support his prima facie case, Plaintiff points to Defendant's treatment of two other paramedics, Andrew Bruckner and Christopher Pattinson, who were also present on the December 8 patient call and are not gay. *See E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800-01 (10th Cir. 2007) (noting that one method by which a plaintiff can demonstrate circumstances that give rise to an inference of discrimination is by showing that the employer treated similarly situated employees more favorably). However, Plaintiff has not adduced evidence that they were similarly situated to him as the *attending paramedic* notwithstanding the undisputed fact that they also provided treatment for the patient. (*See* ECF No. 110, ¶ 32.) According to Defendant, the role of the attending paramedic is to act as the decision-maker and take responsibility for the patient's care. (*Id.*) Plaintiff does not dispute that he was that attending paramedic, and the

4

Court finds that this means he had different duties than the other paramedics on the call. Nor does Plaintiff dispute that he made the decision to administer epinephrine or that he administered it to the patient before notifying the other paramedics of his decision. Thus, the Court further finds that Plaintiff and the other paramedics were "different in their relative level of culpability." *McGowan v. City of Eufala*, 472 F.3d 736, 745-46 (10th Cir. 2006) (concluding that booking officer and jailer were not similarly situated because their jobs were very different, even though they both monitored prisoners in the jail and reported to the same individual).

"Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'" *PVNF*, 487 F.3d at 801. But the Court rejects Plaintiff's broad assertion that he was similarly situated to the other paramedics simply because they all practiced under the medical license of Dr. Kevin McVaney, the medical director. (*See* ECF No. 110, ¶¶ 45-47.) Even if all the paramedics were generally subject to the same expectations and policies and were overseen by Dr. McVaney, who made decisions about coaching and firing them, it does not follow that they each were assigned comparable roles on the December 8 patient call or that those who performed supporting roles engaged in conduct of comparable seriousness to Plaintiff's.

Further, Plaintiff's and Dr. McVaney's expectation that the other paramedics would intervene if they were aware of a protocol violation or administering inappropriate medicine by another paramedic is insufficient to raise a genuine issue of material fact in this context for two reasons. First, Plaintiff has adduced no evidence that any such failure to intervene in certain circumstances was comparable to making inappropriate decisions about treatment and acting on

5

those decisions in the first instance. *See McGowan*, 472 F.3d at 745 ("[E]ven employees who are similarly situated must have been disciplined for conduct of 'comparable seriousness' in order for their disparate treatment to be relevant."). Second, Plaintiff has also adduced no evidence that the other paramedics had an opportunity to intervene or were even aware that he had administered the epinephrine until after he had done so. (*See* ECF No. 110, ¶ 32.)

Moreover, Plaintiff's contention that other paramedics were also to blame for the handling of the December 8 call ignores Defendant's other stated reasons for firing him, including his "history of refusing to accept accountability or feedback from Paramedic leadership and peers." (ECF No. 89-5 at 2.) There is no evidence that the other paramedics had a similar history of being unreceptive to coaching. (*See* ECF No. 110, ¶ 44.) The termination notice does not rely solely on Plaintiff's poor judgment on December 8 as the reason for the termination decision—he was terminated both because he engaged in "bad medicine" and refused to accept coaching about such "bad medicine." (*Id.* at ¶ 48.) Indeed, the record shows that Plaintiff continued to insist he did nothing wrong even after he was terminated, stating in text messages: "I still stand behind what I did (it wasn't even anything bad!) and I'd do it again in a heartbeat" (ECF No. 110-3 at 2), and "I still wouldn't change a thing about the decision I made" (*id.* at 4). Accordingly, Plaintiff has failed to establish he was similarly situated to the other paramedics on the December 8 call.

To support his prima facie case, Plaintiff also points to evidence that Dr. McVaney utilized progressive discipline with two other paramedics, J.H. and C.M., for their "bad medicine," while refusing to do the same for Plaintiff. (ECF No. 108 at 8-9.) However, Plaintiff fails to show that these paramedics were similarly situated to him—he provides no context for

6

what they did wrong or any evidence that either of them resisted coaching.  (*See* ECF No. 110, ¶ 49.)  Thus, on the current record, there is no basis to support Plaintiff's position that his actions and decisions with respect to the December 8 patient call were comparable to the "bad medicine" of these paramedics.

Plaintiff also relies on evidence that another paramedic, Joy Stephens, disagreed with Dr. McVaney's coaching about medical treatment but was not reprimanded as he was.  But the nature of the disagreement is insufficiently explained to show Plaintiff was similarly situated to Ms. Stephens, and, again, Plaintiff provides no meaningful context that supports his position.  (*See* ECF No. 110, ¶¶ 55-57.)  Neither Ms. Stephens' purported statement to Dr. McVaney that "we'll have to agree to disagree on that particular thing" nor her assertion that paramedics often disagree with their supervising physicians (ECF No. 108 at 10) demonstrates the existence of a genuine issue for trial on Plaintiff's discrimination claims.  In addition, Plaintiff does not argue or present any evidence that Ms. Stephens had a history of declining accountability or refusing to acknowledge mistakes.  Accordingly, there is no evidence that Plaintiff's conduct was sufficiently similar to that of Ms. Stephens to allow an inference of discrimination, and the Court finds Plaintiff has failed to establish a prima facie case.

        2.    <u>Pretext</u>

Plaintiff's discrimination claims fail for the additional reason that he has not shown Defendant's stated reasons for firing him—because he exhibited poor judgment on the December 8 call and was not amenable to coaching—are unworthy of belief.  *See Adamson*, 514 F.3d at 1146.  As discussed below, Defendant's explanation for firing him does not contain such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions that a

7

reasonable factfinder could find it unworthy of credence.  *See EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1198 (10th Cir. 2000).  As a result, the Court finds Defendant is also entitled to summary judgment on Plaintiff's discrimination claims because Plaintiff has failed to establish a genuine issue as to whether Defendant's explanation for firing him is pretextual.

Ordinarily, a plaintiff may show pretext by pointing to evidence that the defendant's stated reasons for not hiring him were false, that the defendant acted contrary to an applicable policy, or that the plaintiff was treated differently from other similarly situated employes who violated work rules of comparable seriousness.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).  "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith on those beliefs."  *Luster*, 667 F.3d at 1093 (quotation omitted).

Here, Plaintiff contends that Dr. McVaney's personal beliefs about homosexuality, coupled with the circumstances surrounding Plaintiff's termination, could lead a factfinder to determine Defendant's proffered reasons are pretextual.  (*See* ECF No. 108 at 11-12.)  But Dr. McVaney's deposition testimony is not as unequivocal as Plaintiff suggests.  Dr. McVaney testified that he believes sexual intimacy outside of the bonds of marriage is a sin for both homosexuals and heterosexuals.  (ECF No. 89-20 at 7.)  He also testified that he puts aside his personal convictions while working for Defendant and that he believes in treating people fairly and not expecting them to align their behavior with his beliefs.  (*Id.* at 10-11.)  He further testified that it would be improper for him to use his personal views of homosexuality as a way of judging Plaintiff's job performance.  (*Id.* at 13.)  Although Dr. McVaney was aware of

8

Plaintiff's sexual orientation, Plaintiff has not adduced evidence that Dr. McVaney treated him unprofessionally or that his sexual orientation, as opposed to his job performance, prompted his termination. Considering the facts as they appeared to Defendant at the time Plaintiff was fired, the Court cannot conclude on the current record that its stated reasons for firing him were not honestly held.

Plaintiff places undue emphasis on the recording he made of his January 4, 2021, meeting with Dr. McVaney and another doctor, contending that a jury needs to hear the recording to determine whether he was combative. (*See* ECF No. 108 at 12-14.) However, "[i]n determining whether the proffered reason for a decision was pretextual, [courts] examine the facts as they appear *to the person making the decision* not the plaintiff's subjective evaluation of the situation." *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2011) (quotation omitted). Therefore, it is Defendant's perception of Plaintiff's demeanor that matters. Notably, the termination notice mentions two separate meetings regarding the December 8 call—albeit without citing the dates on which they occurred—as well as Plaintiff's "history of refusing to accept accountability or feedback." (ECF No. 89-5 at 2.) Thus, the pertinent question in determining pretext here is not whether Defendant correctly assessed Plaintiff's level of combativeness at the January 4 meeting or on any other occasion but whether its overall belief about his demeanor and refusal to accept accountability was genuine and substantiated. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1119 (10th Cir. 2007). During his deposition, Dr. McVaney identified multiple instances during a recorded coaching session with Plaintiff and another doctor wherein Plaintiff was resisting coaching and direction. (ECF No. 110, ¶ 11.) In addition, at Plaintiff's termination meeting, "Dr. McVaney explained to

9

Plaintiff that he has never, in his career, had a paramedic working under his medical license refuse feedback and coaching in the same manner that Plaintiff did." (*Id.* at ¶ 19.) Thus, even if Plaintiff could show he was not combative at the January 4 meeting, that would not create a genuine issue for trial as whether Defendant could have genuinely found him to be unreceptive to coaching based on his employment history. (*See, e.g.*, *id.* at ¶ 13.)

But Plaintiff fails to make even this showing. Although he cites snippets from the January 4 meeting to suggest that he could have been seen as amenable to coaching, these fall short of establishing that he was *never* combative or that Defendant could not have been sincere in its belief, gleaned from a totality of the circumstances, that he was defensive and unreceptive to feedback and coaching. Even if the recording could cause a trier of fact could reach different conclusions about Plaintiff's demeanor at the meeting, that does not necessarily mean Defendant could not have reached different conclusions or that its stated rationale was not genuine. *See Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006). Accordingly, to the extent Plaintiff implies that Defendant's stated reasons for terminating him are a pretext for discrimination, he has not adduced any evidence or developed any argument to support drawing such an inference.

Finally, to the extent Plaintiff supports his discrimination claims by asserting that he was subjected to a hostile work environment, he has failed to provide sufficient allegations to support his position. (*See* ECF No. 108 at 16-18.) To constitute actionable sexual harassment, Plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment and that he was targeted because of his sexual

orientation.  *See PVNF*, 487 F.3d at 798.  But Plaintiff's conclusory vague and repeated assertion that the "harassment that was constant and continuous" (ECF No. 110, ¶ 31), devoid of explanation or specific examples, is insufficient to raise a genuine issue as to pervasively hostile work environment.  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 ("[T]he nonmoving party [opposing summary judgment] may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.").

For example, Plaintiff testified that Ms. Stephens believed he was fired because of his sexuality and that he "was subject to punishment and treatment during the course of her 25-year career at Denver Health that she never saw otherwise," without providing any pertinent examples or explanation.  (ECF No. 106-8 at 2.)  He also testified that he felt another employee "made fun of him for being gay" based on comment about having kids the employee made in 2013 or 2014.  (*Id.* at 11.)  In addition, Plaintiff testified that even after he complained to the human resources department, he "continued to be treated the way I was."  (*Id.* at 23.)  But such vague and conclusory allegations fail to meet Plaintiff's burden of establishing a genuine issue for trial.  The Court notes that the human resources department investigated Plaintiff's complaints and determined they were unsubstantiated, which further undermines Plaintiff's position.  (ECF No. 110, ¶¶ 22, 62.)

The testimony of Ms. Stephens cited by Plaintiff is likewise insufficient as it is similarly conclusory and based on statements Plaintiff made to her regarding the alleged harassment.  (*See, e.g.*, ECF No. 106-2 at 6 (stating that Plaintiff was "being kind of picked on" because he got called up to the office more than anyone else); *id.* at 12 (stating that Plaintiff "would just tell me

what happened when he came back downstairs [from the office]").) Such "corroboration" adds no heft to Plaintiff's subjective assessment of how he was treated during his employment with Defendant. The very few specific comments Plaintiff does cite—one about his pants and another about him not having the stress of a wife, kids, or a mortgage—fall well short the steady stream of vulgar and offensive epithets needed to establish the existence of a hostile work environment. *Cf. PVNF*, 487 F.3d at 799. Therefore, Plaintiff fails to state a discrimination claim based on pretext.

### B. Retaliation Claims

Plaintiff's retaliation claims fare no better than his discrimination claims. To establish a prima facie case of retaliation, he must show that he engaged in protected opposition to discrimination, a reasonable employee would have found the challenged action materially adverse, and a causal connection between the protected activity and the materially adverse action. *See McGowan*, 472 F.3d at 741.

With respect to the first element, Plaintiff cites complaints he made to an outside investigator and Defendant's human resources department in March 2019 as evidence of protected activity. (ECF No. 108 at 18-19.) He also cites an August 2020 email he sent to Dr. McVaney. (*Id.* at 19.) But there is no evidence that Dr. McVaney was aware of the March 2019 complaints, which preceded his termination by nearly two years. (*See* ECF No. 110, ¶ 9.) Therefore, assuming these complaints amount to protected activity, Plaintiff has not established the second element by showing they are causally connected to his termination in January 2021. As for the August 2020 email, it says nothing that amounts to protected opposition to discrimination, and Plaintiff has failed to even argue otherwise. Accordingly, it

does not amount to protected activity and therefore cannot support a claim for retaliation. Plaintiff's contention that Defendant's investigation into the December 8 call constitutes an adverse employment action because it subjected him to humiliation and embarrassment is also unavailing. *See Lincoln v. Maketa*, 880 F.3d 533, 543 (10th Cir. 2018) ("We generally do not consider standard workplace investigations to be adverse employment actions."). Moreover, he has not shown that the investigation was causally related to any of his complaints as opposed to his handling of the December 8 call. Accordingly, the Court finds Plaintiff has failed to state a prima facie case for his retaliation claims.

As discussed above, Plaintiff has also failed to show there is reason to believe Defendant's reasons for firing him are pretextual. His retaliation claims fail on this basis as well.

## IV.   CONCLUSION

Therefore, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 90), and the pending motions to preclude and exclude testimony (ECF Nos. 84, 85, 86) are DENIED AS MOOT. The Clerk is directed to ENTER JUDGMENT in Defendant's favor and CLOSE this case.

DATED this 12th day of July, 2024.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge